UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEAL BANK, USA,                         Case No.
                                        Hon.
    Plaintiff,

v.

CARLOZZI PROPERTY MANAGEMENT, LLC,
GENEI INDUSTRIES, INC.,
INDUSTRIAL PACKAGING SERVICES --
NORTH CAROLINA, LTD. and
MARTIN R. GENEI,
    jointly and severally,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Beal Bank, USA ("BBUSA"), by and through its attorneys, Walton & Donnelly, P.C., states as follows for its Complaint against Defendants:

### PARTIES, JURISDICTION AND VENUE

1. BBUSA is a Nevada savings bank having a principal place of business in Las Vegas, NV.

2. Defendant Carlozzi Property Management, LLC ("Borrower") is a North Carolina limited liability company having its principal place of business in Forest City, North Carolina. Reports filed by Borrower with the State of North Carolina reflect that Borrower's only member is defendant Martin R. Genei, who is a Michigan citizen, as set forth in greater detail in paragraph 5 below.

3. Defendant Genei Industries, Inc. ("GI") is a Michigan corporation, having its principal place of business in Livingston County, Michigan.

4. Defendant Industrial Packaging Services -- North Carolina, Ltd. ("IPS") was a Michigan corporation having its principal place of business in Saginaw, Saginaw County, MI. The term of existence for IPS expired in August, 2008.

5. Defendant Martin R. Genei ("Genei") is a citizen of Michigan, residing in Livingston County, Michigan.

6. All the above defendants, except for Borrower, are hereinafter referred to collectively as the "Guarantor Defendants", and collectively with Borrower are referred to as the "Defendants".

7. The amount in controversy exceeds the sum or value of $75,000. There is complete diversity of citizenship between BBUSA and the Defendants. The Court has jurisdiction over this action under 28 USC §1332. Venue is proper under 28 USC §1391(a)

## GENERAL ALLEGATIONS

8. This action arises out of a banking relationship between Community Bank of Rowan ("CBR"), a bank chartered in the State of North Carolina and having its principal place of business in that state, and Borrower, whereby Borrower obtained financing (the "Loan") from CBR.

9. By assignment, as set forth in greater detail below, BBUSA holds the following documents evidencing and securing the Loan, and establishing the terms for its repayment:

   a. A promissory note dated August 30, 2007 in the principal amount of $1,105,000.00 (the "Note"), executed and delivered by Borrower to CBR. A copy of the Note is attached as **Exhibit 1** and its terms are incorporated herein by reference.

2

      b.      An agreement dated August 30, 2007, entitled "Business Loan Agreement" ("the Loan Agreement"), executed and delivered by Borrower to CBR. A copy of the Loan Agreement is attached as **Exhibit 2**, and its terms are incorporated herein by reference.

      c.      A deed of trust dated August 30, 2007 ("the Mortgage", a copy of which is attached as **Exhibit 3**), executed and delivered by Borrower to CBR, pursuant to which the Loan was secured by the real property as described in the Mortgage. That property will be referred to herein as "the Property."

      d.      Commercial Guaranties executed on or about August 30, 2007 by each of the Guarantor Defendants (three total). Those documents ("the Guaranties") are attached as **Exhibit 4**, and their terms are incorporated herein by reference.

      e.      A series of documents modifying the terms of re-payment under the Note and the Loan Agreement, executed by Borrower on various dates between August 12, 2008 and October 29, 2012. Copies of those documents, referred to herein as "the Modification Agreements," are attached as **Exhibit 5**. Their terms are incorporated herein by reference.

The Note, the Loan Agreement, the Mortgage, the Guaranties, and the Modification Agreements, along with all other instruments, contracts and conveyances governing and/or pertaining to the Loan, are collectively referred to hereinafter as the "Loan Documents."

      10.      Pursuant to the Loan Documents, Borrower agreed to pay, *inter alia,* principal and interest due on the Loan, together with the costs of collection, including reasonable attorneys fees incurred, as a consequence of Borrower's default under the Loan Agreement, as modified by the Modification Agreements, and the Note.

      11.      Pursuant to the Guaranties, each Guarantor agreed to pay all obligations of Borrower under the Note and the Loan Agreement, as modified by the Modification Agreements,

including, *inter alia,* principal and interest due on the Loan and the costs of collection, including reasonable attorneys fees incurred, as a consequence of Borrower's default under the Loan Agreement, as modified by the Modification Agreements, and the Note..

12. Pursuant to the Loan Documents, Borrower waived its right to a jury trial in proceedings connected to those agreements.

13. The Loan to Borrower was originally made by CBR on or about August 30, 2007. On or about August 5, 2011, CBR conveyed and assigned its rights for repayment of the Loan to Pisgah Community Bank ("PCB"), a bank chartered in the State of North Carolina and having its principal place of business in North Carolina. That assignment is evidenced by an Assignment of Promissory Note and Deed of Trust, a copy of which is attached as **Exhibit 6**.

14. On or about May 10, 2013, after the Loan and related documents were assigned to PCB as set forth in the immediately preceding paragraph, PCB was placed in receivership. The receiver, the Federal Deposit Insurance Corporation ("FDIC") succeeded to all of PCB's rights, title and interest with respect to Borrower's and the Guarantor Defendants' liabilities and obligations under the Loan Documents, including all obligations to repay the Loan, and in addition, possessed additional rights and protections pertaining to enforcing repayment of the Loan and enforcement of the Loan Documents that are afforded by federal law.

15. On or about November 25, 2013, for valuable consideration, the FDIC assigned its rights, title and interest in and to repayment of the Loan, and rights under the Loan Documents, to BBUSA. That assignment is evidenced by an Assignment of Deed of Trust that is attached as **Exhibit 7**. Further, pursuant to a Note Allonge, the FDIC endorsed the Note to BBUSA (see Exhibit 1, p. 3)**.**

16.     Borrower defaulted on its obligations to repay the Loan, as set forth in the Loan Documents as modified by the Modification Agreements, by, *inter alia*, failing to make full payment of the outstanding principal and interest when the Loan became due under the Loan Documents.

17.     Shortly before July 17, 2014, Defendants communicated to CLMG Corp. ("CLMG"), the servicer for BBUSA with respect to the Loan, a request that BBUSA consent to a transaction pursuant to which, *inter alia,* the Property would be sold to a third party, free of the lien imposed by the Mortgage, and a payment would be made to BBUSA.

18.     In response to Defendants' request, as described in the immediately preceding paragraph, CLMG, as the duly authorized agent of BBUSA, entered into an agreement with Defendants providing for, *inter alia,* the sale of the Property (referred to below as "the Short Sale"), the partial release of the Mortgage, and a payment to BBUSA upon the terms set forth therein.  That agreement, a copy of which is attached as **Exhibit 8**, will be referred to below as "the Short Sale Agreement."

19.     Any payment made to BBUSA pursuant to the Short Sale Agreement was to be applied in reduction of amounts owed on account of the Loan, upon the terms set forth in the Short Sale Agreement.

20.     In an affidavit attached as Exhibit 4 to the Short Sale Agreement, Defendants acknowledged and agreed that BBUSA's receipt of any payment pursuant to the Short Sale Agreement, and application of said payment in reduction of amounts owed on account of the Loan, would not release Defendants from liability for any remaining balance owed to BBUSA thereafter on account of the Loan and the Loan Documents.

21. Following completion of the Short Sale, tender of a payment to BBUSA pursuant to the Short Sale Agreement, and application of said payment in reduction of amounts owed to BBUSA on account of the Loan, the Loan was not fully repaid.

22. On or about December 15, 2014, counsel for BBUSA sent Defendants notice that Borrower was in default on its obligations under the Loan Documents to repay the Loan and demanded full payment, within fourteen (14) days, from Borrower and from the Guarantor Defendants. That notice and demand advised Defendants that if the Loan was not fully paid as demanded, BBUSA was prepared to exercise its legal remedies against Defendants. A copy of that notice and demand is attached hereto as **Exhibit 9**.

23. Despite the foregoing demands, Defendants have failed and refused to pay the unpaid balance due on the Loan.

24. As a consequence of Borrower's default, BBUSA became entitled to exercise all of its rights and remedies as assignee against Borrower, as provided under the Note, the Loan Agreement and the Modification Agreements, and by law, and against the Guarantor Defendants, under the Guaranties and by law.

25. As of December 15, 2015, the balance due on the Loan was $448,756.63. Since that date additional interest has accrued, and will continue to do so until the Loan is paid in full. In addition, collection costs, including reasonable attorney fees, have been and will continue to be incurred until all unpaid amounts are paid in full.

## COUNT I
## BREACH OF CONTRACT
## (AGAINST BORROWER)

26. BBUSA incorporates herein by reference the allegations of paragraphs 1 through 25 above.

27. CBR extended credit and loaned money to Borrower, as good and valuable consideration for Borrower's obligations owed to CBR under the Loan Documents.

28. For valuable consideration, PCB acquired the rights of CBR to enforce Borrower's obligations to repay the Loan under the Loan Documents.

29. The FDIC, upon becoming receiver for PCB, acquired the rights to enforce Borrower's obligations to repay the Loan under the Loan Documents, and assigned those rights, along with FDIC's rights as receiver, to BBUSA for valuable consideration.

30. By virtue of the foregoing assignment from the FDIC, BBUSA is now entitled to exercise all rights of CBR, PCB and the FDIC under the Loan Documents, including but not limited to the right to collect the Loan and otherwise enforce the Loan Documents.

31. The Loan Documents are valid and enforceable contracts between BBUSA and Borrower.

32. Borrower has materially breached its contracts by, *inter alia*, failing to timely pay the balance owed on the Loan pursuant to the Note.

33. As a direct and proximate result of Borrower's breach of its contracts, BBUSA has suffered damages, as set forth above.

WHEREFORE, BBUSA requests that this Court enter judgment against Carlozzi Property Management, LLC, and in favor of BBUSA, for all amounts to which BBUSA may be

entitled, plus interest, costs and attorney fees. BBUSA also requests such other relief as the Court deems appropriate.

## COUNT II
## LIABILITY ON PROMISSORY NOTE
## (AGAINST BORROWER)

34. BBUSA incorporates herein by reference the allegations of paragraphs 1 through 33 above.

35. The Note is a negotiable instrument, subject to the Uniform Commercial Code ("UCC") as codified in MCL 440.3104.

36. BBUSA is in possession of the Note, and the Note is endorsed to BBUSA. BBUSA took the Note for value and in good faith, and BBUSA is otherwise entitled to enforce the Note as a holder in due course as set forth in MCL 440.3302.

37. Borrower is the maker of the Note, and as such, is liable to pay BBUSA the amount due on the Note, according to the Note's terms, as set forth in MCL 440.3105 and 440.4412.

38. As set forth above, BBUSA has demanded that Borrower pay the amount due under the Note, and Borrower has failed and refused to do so.

39. As the result of Borrower's failure and refusal to pay BBUSA the amount due under the Note, BBUSA has been damaged.

WHEREFORE, BBUSA requests that this Court enter judgment against Carlozzi Property Management, LLC, and in favor of BBUSA, for all amounts to which BBUSA may be entitled, plus interest, costs and attorney fees. BBUSA also requests such other relief as the Court deems appropriate.

**COUNT III**
**BREACH OF CONTRACT**
**(AGAINST THE GUARANTOR DEFENDANTS)**

40.     BBUSA incorporates herein by reference the allegations in paragraph 1 through 39 above.

41.     In order to induce CBR to extend credit and loan money to Borrower, as good and valuable consideration for Borrower's obligations owed to CBR under the Loan Documents, the Guarantor Defendants guarantied and agreed to pay all of Borrower's indebtedness relating to the Loan, and agreed to reimburse CBR for its costs of collection, including reasonable attorney fees and costs, pursuant to the Guaranties, as set forth above.

42.     For valuable consideration, PCB acquired the rights of CBR to enforce Borrower's obligations to repay the Loan under the Loan Documents and to enforce the Guarantor Defendants' obligations under the Guaranties.

43.     The FDIC, upon becoming receiver for PCB, acquired the rights to enforce the Borrower's obligations to repay the Loan under the Loan Documents and to enforce the Guarantor Defendants' obligations to repay the Loan under the Guaranties, and assigned those rights, along with FDIC's rights as receiver, to BBUSA for valuable consideration.

44.     By virtue of the foregoing assignment from the FDIC, BBUSA is now entitled to exercise all rights of CBR, PCB and the FDIC under the Guaranties, including but not limited to the right to collect the Loan and to recover its costs of collection, including but not limited to reasonable attorneys fees.

45.     The Guaranties are valid and enforceable contracts between the Guarantor Defendants and BBUSA.

46. The Guarantor Defendants have materially breached the Guaranties by, inter alia, failing and refusing to pay the full amount of Borrower's indebtedness owed to BBUSA pursuant to the Note and the other Loan Documents.

47. As a direct and proximate result of the Guarantor Defendants' breach of the Guaranties, BBUSA has suffered damages, as set forth above.

WHEREFORE, BBUSA requests that this Court enter judgment against Genei Industries, Inc., Industrial Packaging Services—North Carolina, Ltd., and Martin R. Genei, jointly and severally, and in favor of BBUSA, for all amounts to which BBUSA may be entitled, plus interest, costs and attorney fees. BBUSA also requests such other relief as the Court deems appropriate.

## COUNT IV
## BREACH OF CONTRACT IMPLIED IN LAW
## (AGAINST ALL DEFENDANTS)

48. BBUSA incorporates herein by reference the allegations in paragraphs 1 through 47 above.

49. CBR extended credit and loaned money to Borrower, as good and valuable consideration for Borrower's obligations owed to CBR under the Loan Documents.

50. For valuable consideration, PCB acquired the rights of CBR to enforce both Borrower's obligations to repay the Loan under the Loan Documents and Guarantor Defendants' obligations under the Guaranties.

51. The FDIC, upon becoming receiver for PCB, acquired the rights to enforce both Borrower's obligations to repay the Loan under the Loan Documents, and Guarantor Defendants' obligations under the Guaranties, and assigned those rights, along with FDIC's rights as receiver, to BBUSA for valuable consideration.

52. By virtue of the foregoing assignment from the FDIC, BBUSA is now entitled to exercise all rights of CBR, PCB and the FDIC under the Loan Documents, including but not limited to the right to collect the Loan and otherwise enforce Defendants' obligations.

53. Defendants have failed and refused to repay BBUSA for the Loan. Defendants have thus received a benefit and have been unjustly enriched at the expense of BBUSA.

54. Under the circumstances, it would be unjust to permit Defendants to retain the benefit they received without requiring them to pay for that benefit.

55. As a direct and proximate result of Defendants' unjust enrichment, BBUSA has suffered damages, as set forth above.

WHEREFORE, BBUSA requests that this Court enter judgment against all Defendants, jointly and severally, and in favor of BBUSA, for all relief to which BBUSA is entitled including interest, costs, attorney fees, and such additional relief as the Court deems appropriate under the circumstances.

## COUNT V
## BREACH OF CONTRACT IMPLIED IN FACT
## (AGAINST ALL DEFENDANTS)

56. BBUSA incorporates herein by reference the allegations in paragraphs 1 through 55 above.

57. At the time CBR extended credit and loaned money to Borrower, CBR expected that Defendants would compensate CBR therefor, according to the terms of the parties' contracts.

58. At the time CBR extended credit and loaned money to Borrower and as consideration for such credit extended and money loaned, Defendants expected to repay CBR according to the terms of the parties' contracts.

59. For valuable consideration, PCB acquired the rights of CBR to enforce Borrower's obligations to repay the Loan under the Loan Documents, and Guarantor Defendants' obligations under the Guaranties.

60. The FDIC, upon becoming receiver for PCB, acquired the rights to enforce Borrower's obligations to repay the Loan under the Loan Documents, and Guarantor Defendants' obligations under the Guaranties, and assigned those rights, along with FDIC's rights as receiver, to BBUSA for valuable consideration.

61. By virtue of the foregoing assignment from the FDIC, BBUSA is now entitled to exercise all rights of CBR, PCB and the FDIC under the Loan Documents, including but not limited to the right to collect the Loan and otherwise enforce Defendants' obligations.

62. BBUSA demanded that Defendants repay the Loan but the Defendants have failed and refused to tender any payment to BBUSA.

63. As a direct and proximate result of Defendants' refusal to pay, BBUSA has suffered damages, as set forth above.

WHEREFORE, BBUSA requests that this Court enter judgment against all Defendants, jointly and severally, and in favor of BBUSA, for all relief to which BBUSA is entitled including interest, costs, attorney fees, and such additional relief as the Court deems appropriate under the circumstances.

## COUNT VI
## PROMISSORY ESTOPPEL
## (AGAINST ALL DEFENDANTS)

64. BBUSA incorporates herein by reference the allegations in paragraphs 1 through 63 above.

65. Defendants expressly promised CBR that, if CBR would loan money to Borrower, they would repay the Loan according to the terms stated in the parties' contracts.

66. Defendants' promises were clear, definite and unequivocal, and were specifically made to induce CBR to loan money to Borrower for the benefit of the Defendants.

67. In reasonable reliance on Defendants' promises, and to CBR's substantial detriment, CBR loaned money to Borrower as set forth above.

68. At the time of making the promises and inducing CBR to loan them money, Defendants could reasonably foresee that their failure to repay money loaned in reliance on their promises would cause CBR damages.

69. For valuable consideration, PCB acquired the rights of CBR to enforce Borrower's obligations to repay the Loan under the Loan Documents, and Guarantor Defendants' obligations under the Guaranties.

70. The FDIC, upon becoming receiver for PCB, acquired the rights to enforce Borrower's obligations to repay the Loan under the Loan Documents, and Guarantor Defendants' obligations under the Guaranties, and assigned those rights, along with FDIC's rights as receiver, to BBUSA for valuable consideration.

71. By virtue of the foregoing assignment from the FDIC, BBUSA is now entitled to exercise all rights of CBR, PCB and the FDIC under the Loan Documents, including but not limited to the right to collect the Loan and otherwise enforce Defendants' obligations.

72. Defendants have breached their promises to repay the Loan.  As a direct and proximate result of the Defendants' breach of their promises, BBUSA has been damaged.

73. Under the circumstances, Defendants' promises to repay the Loan must be enforced to prevent injustice.

WHEREFORE, BBUSA requests that this Court enter judgment against all Defendants, jointly and severally, and in favor of BBUSA, for all relief to which BBUSA is entitled including interest, costs, attorney fees, and such additional relief as the Court deems appropriate under the circumstances.

                Respectfully submitted,

                WALTON & DONNELLY, P.C.

                /s/ Jonathan T. Walton
                Jonathan T. Walton, Jr. (P32969)
                1550 Buhl Building
                535 Griswold Street
                Detroit, MI 48226
                (313) 963-8989
                jonathan.walton@waltondonnelly.com
                Attorneys for Plaintiff

Dated:  January 16, 2015